NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| STEVEN A. NERGER, | : | |
| | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | Civil Action No. 10-CV-3165 (DMC) (MF) |
| JPC ENTERPRISES, INC., STEVEN TABAK, and JOSEPH TABAK, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DENNIS M. CAVANAUGH, U.S.D.J.**:

This matter comes before the Court upon motion by Defendants JPC Enterprises, Inc., Steven Tabak and Joseph Tabak (hereinafter, "Defendants") for summary judgment[1] filed August 15, 2011 and Plaintiff Steven A. Nerger's (hereinafter, "Plaintiff") motion for summary judgment as to Count III filed the same day.[2] Pursuant to FED. R. CIV. P. 78, no oral argument was heard. For the reasons stated below, Defendant's motion for summary judgment (ECF No.

---

[1] Defendants seek, in the concluding paragraph of their brief in support of the motion for summary judgment, "dismissal of the complaint," presumably in toto, and dismissal of the complaint against Steven Tabak individually. (Def.'s Mot. Summ. J. 17, Aug. 15, 2011, ECF No. 23-3.) As Defendants have moved for summary judgment as opposed to dismissal in the instant action, this Court will construe Defendants' motion entirely as a motion for summary judgment and hereby considers each argument under the summary judgment standard of review described herein. See supra Section II.

[2] Count III states a cause of action for breach of contract against Joseph Tabak for the "Excess Amount," as stated in Plaintiff's motion for summary judgment, of $319,971.93. (Pl.'s Mot. Summ. J. 2, Aug. 15, 2011, ECF No. 27-1)

1

23) is **denied** and Plaintiffs' motion for summary judgment (ECF No. 27) is **denied**.

I.  **BACKGROUND**[3]

Plaintiff Steven Nerger is assignee and trustee for the benefit of creditors of Clark National ("Clark National.") (Pl.'s Compl. Ex. A, Jun. 21, 2010, ECF No. 1-1.) As such, Plaintiff is under a duty to transfer property resulting from the discontinuation of Clark National to creditors. Id. Plaintiff's claims arise from various agreements involved in and related to the purchase of one of the Clark National entities, Paper Plus, Inc. ("Paper Plus"), by JPC Enterprises, Inc. ("JPC"). Defendants are JPC, Steven Tabak and Joseph Tabak. Steven Tabak ("Steven") is JPC's President. Joseph Tabak ("Joseph") is JPC's Chairman. On December 14, 2009, a purchase agreement was executed to sell substantially all of the assets of Paper Plus to JPC ("Asset Purchase Agreement" alternatively "APA").

At issue in this matter are rights and obligations arising out of five agreements designating and describing relationships between individuals and entities involved in the dissolution of Clark National and the purchase of Paper Plus by JPC. Underlying all of these agreements is the Indebtedness of Clark National to Wells Fargo Bank, N.A. ("Wells Fargo") executed before the sale of Paper Plus to JPC ("Indebtedness"). (Pl.'s Compl. ¶ 8-10, Jun. 21, 2010, ECF No. 1.) The Indebtedness arises out of a Credit Agreement establishing WF's properly perfected secured interest in all assets of Clark National which, as of the date of assignment March 16, 2010, exceeded $9 million. Id. at ¶ 10. The other agreements include: (1) the Nerger Assignment; (2) the Asset Purchase Agreement; (3) Joseph Tabak's guaranty securing payment of the Excess Amount to Paper Plus ("Joseph Guaranty"); (4) Steven Tabak's

---

[3] The facts set forth in this Opinion are taken from the Parties' statements in their respective submissions.

personal guaranty on the Hindman Loan to Community First Bank; and (5) the Consent Letter from Wells Fargo Business Credit ("WFBC") to Steven Tabak.

On or about January 31, 2008, Clark National entered into the Credit Agreement with Wells Fargo. (Pl.'s Mot. for Summ. J. 5.) The APA thereafter established the terms of the transaction by which JPC would purchase Paper Plus. Pursuant to Section 2.1(b) of the APA, the purchase price paid by JPC to Paper Plus included one hundred percent of the face value of the Accounts Receivable not older than ninety days as of the closing date, less a reserve in the amount of ten percent of the face amount of the current receivables. (Pl.'s Compl. Ex. B, at 3.)

The agreement under the APA stated that JPC would collect payment for Paper Plus' Accounts Receivable during the closing period ("Closing AR Payment"). The parties presently agree that the purchase amount for Accounts Receivable was $3,013,081.58. (Pl.'s Am. Compl. ¶ 34; Def.'s SOF ¶ 9, Aug. 15, 2011, ECF No. 23-1; Pl.'s Resp. SOF ¶ 9, Sept. 6, 2011, ECF No. 30-1.) The balance of value collected in excess of the Closing AR Payment constitutes the "Excess Amount." The parties agree that the Excess Amount totals $319,971.93. (Pl.'s SOF ¶ 13, Aug. 15, 2011, ECF No. 27-2; Def.'s Resp. SOF ¶ 13, Sept. 6, 2011, ECF No. 29.) Plaintiff contends that he, as assignee, is entitled to the Closing AR Payment, the Excess Amount and all uncollected Accounts Receivable. (Pl.'s Am. Compl. 7-8; Pl.'s Mot. for Summ. J. 5.)

A portion of the purchase price was escrowed to pay any New Jersey State transfer taxes arising from the purchase transaction. (Pl.'s Am. Compl. Ex. B, at 17.) The Escrowed Amount, totaling $180,000, was placed in a trust account. (Pl.'s Am. Compl. Ex. F, at 3.) Pursuant to a letter dated May 12, 2010, from attorneys responsible for that trust account, after payment of transfer taxes to the State, the unused Escrowed Amount totaled $178,310.76. Id. at 2.

Under the APA, JPC was entitled to all Vendor Rebates and promotional payments due from vendors relating to vendor invoices dated on or after the Closing Date ("Vendor Rebates.") (Pl.'s Am. Compl. Ex. A.) Regarding Vendor Rebates from invoices dated prior to the Closing Date, JPC would be required to pay remittance to Paper Plus. Id. The parties agree that neither Plaintiff, the Clark Entities, nor Paper Plus ever received any Vendor Rebates that would be payable to JPC. (Def.'s SOF ¶ 12-3; Pl.'s Resp. SOF ¶ 12-3.)

In order to release its liens in the assets being sold under the APA, Wells Fargo required that Donald D. Hindman and Donald J. Hindman (collectively, the "Hindman's") pay down the Indebtedness by $600,000.00. To this end, the Hindman's obtained a loan from Community First Bank ("Hindman Loan"). President, Steven Tabak executed a personal guaranty for the Hindman Loan. In connection with that guaranty, Steven and the Hindman's entered into an Indemnification and Contribution Agreement ("Indemnity Agreement"). (Pl.'s Am. Compl. Ex. D.) Section 2 of the Indemnity Agreement provided that the Hindman's would reimburse Steven for all amounts paid on account of the guaranty to Community First Bank, including reasonable attorneys' fees. Id. at 1. Section 7 of the Indemnity Agreement provided that, in the event the Hindman's refused to perform any payment obligation therein, Steven would have "the right to direct [JPC] to offset any payments due from [JPC] to [Paper Plus] pursuant to the APA" by the amount of Steven's demand pursuant to the guaranty and all costs expenses and fees incurred by him, "and direct [JPC] to pay such unfunded liabilities to [Steven]." (Pl.'s Am. Compl. Ex. D, at 2, Jun. 21, 2010, ECF No. 1-1.)

Following the Indemnity Agreement, as required by the APA, WFBC evinced its consent to the purchase transaction in a letter dated December 21, 2009 ("Consent Letter"). (Pl.'s Am.

4

Compl. Ex. E, Jun. 21, 2010, ECF No. 1-1.) The Consent Letter contained a release of all of WFBC's liens and other security interests in the assets of Paper Plus sold to JPC. (Pl.'s Am. Compl. Ex. E, at 3.) Additionally, the Consent Letter acknowledged that receipt of amounts under the Consent Letter did not constitute Clark National's payment of the remaining Indebtedness. Id. at 4. Rather all liens other than those released according to the letter would remain in full force and effect. Id. Further, the Consent Letter explicitly states that the obligations of Clark National to the Hindman's under the Hindman Loan would remain subordinate to the Indebtedness. Id. According to the Letter, so too would Clark National's obligation to guaranty any amount by which the Closing AR Payment was less than the amount of Paper Plus's accounts collected within one-hundred twenty days of closing on the sale. Id. The Letter also stated that although Clark National's obligation to indemnify Steven would remain subordinate, the personal obligations of the Hindman's to JPC and Steven including indemnification of Steven in connection with his guaranty of the Hindman Loan, and of the obligation to pay monies uncollected within one-hundred twenty days of closing over the Closing AR Payment would not. Id.

Plaintiff, as trustee and assignee for the benefit of creditors of Clark National, seeks a declaratory judgment against JPC, Steven and Joseph declaring Steven's claims subordinate to payment of the Indebtedness and requiring payment of the Excess Amount, uncollected Accounts Receivable, and the Escrowed Amount to Plaintiff as assignee. (Pl.'s Am. Compl. 7.)

II.   **STANDARD OF REVIEW**

It is well established that this Court is to review the facts in the light most favorable to the nonmoving party. Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 501 (3d Cir.1996);

see also, Dowling v. Citizens Bank, 295 Fed.Appx. 499 (3d Cir. 2008). Summary judgment is appropriate where there are no genuine material issues of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (2008). A factual dispute is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Third Circuit holds that "in considering a motion for summary judgment, a district court may not . . . engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

### III. DISCUSSION

This matter arises out of a $9 million debt incurred through a Credit Agreement between Clark National and Wells Fargo and various related obligations and guarantees surrounding Defendant JPC's purchase of Paper Plus. Plaintiff cites several agreements in support of his argument that Defendants are under a present obligation to make certain priority payments to him, as assignee for Wells Fargo, based on the Indebtedness. The first relevant agreement, the Assignment Agreement (Pl.'s Am. Compl. Ex. A, at 2, Mar. 16, 2010, ECF No. 15), establishes Plaintiff's relationship to this matter as assignee of rights from Paper Plus and the Clark Entities for the benefit of creditors. At issue in each of the parties' motions for summary judgment is Steven's right to set off payment obligations from Defendant JPC. This issue pervades other

arguments advanced by the parties surrounding the Excess Amount and Escrowed Amount. Finally, the parties dispute the state of priority of the Indebtedness owed to Wells Fargo.[4]

### A.     Steven's Right to Set Off

In their motion for summary judgment, Defendants argue that Steven Tabak's right to off set payment from JPC protects him from any payment obligation to Paper Plus and, thereby, assignee pursuant to the APA. Indeed, Defendants aver that this "right of set off trumps the assignee's ability to collect money from JPC." (Def.'s Mot. Summ. J. 12.) However, Plaintiff's response alerts this Court to the fact that the set off applies only to costs paid by Steven, and to the fact that Defendants have thus far failed to provide sufficient evidence regarding the amount Steven has personally paid for his obligations under the Hindman Loan. (Pl.'s Resp. 2.) In Defendants' response to Plaintiff's motion for summary judgment, they argue that the Hindman's default on the Hindman Loan triggered Steven's personal liability which, in turn, triggered the right to set off. Id. Defendants argue, JPC has no obligation to Paper Plus because of JPC's direct obligation to Steven. Id. In effect, Defendants state, the Excess Amount is "no longer due." Id.

Each side characterizes facts derived from and surrounding the APA and Steven's guaranty of the Hindman Loan differently as Plaintiff avers that the set off has no effect without evidence of payments actually made by Steven. (Pl.'s Resp. 10.) Plaintiff further argues that Steven is not protected by the right of set off as a result of the priority status of the Indebtedness to Wells Fargo. (Pl.'s Resp. 12.) These disputes are premised upon the contractual intent of the parties. Facts involving these agreements are material to the genuine issue of whether the set off

---

[4]This Court finds that Defendants' contention that Wells Fargo would be unjustly enriched by recovery in this case is fully confronted by the discussion of the issues as organized herein despite the absence of a direct reference in this Opinion.

absolves Steven of the obligation assignee puts forth. Summary judgment is not appropriate on the set off issue.

### B. Excess Amount: Plaintiff's Amended Complaint Count III

Plaintiff's motion for summary judgment on Count III of the complaint refers to a breach of contract allegation against Joseph and seeks monies under his personal guaranty of the Excess Amount under the Purchase Agreement. (Pl.'s Am. Compl. Ex. C, Dec. 14, 2009, ECF No. 1-1.) Plaintiff provides explicit evidence from the Joseph Guaranty, showing that Joseph expressly waived "any defense . . . set off or other objection of any kind" in Section 3. Id. Therefore, Plaintiff argues, Joseph is not entitled to the set off rights that Steven may or may not hold. (Pl.'s Resp. Mot. for Summ. J. 2-3.) Indeed, a tenet recently upheld by the District of New Jersey must be cited generally for its relevance here: "a guarantor, when sued by the principal's creditor pursuant to a guaranty agreement, cannot rely on an independent cause of action existing in favor of the principal against the creditor as a defense or counterclaim." Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc., No. 09-1313 (SRC), 2009 WL 3230840 (D.N.J. Oct. 2, 2009) (citing Travelodge Hotels, Inc. v. Elkins Motel Assoc., Inc., No. 03-799 (WHW), 2005 WL 2656676, at *14 (D.N.J. Oct.18, 2005)).

In any event, the discussion of the state of obligations involving the Excess Amount are dependent upon the issues related to Steven's right to set off and have not yet been resolved. The parties have shown substantial disagreement as to facts surrounding the right to set off. This Court hereby finds that it would be inappropriate to grant judgment in favor of Plaintiff as to Count III without concluding on other rights and obligations at stake in this matter.

8

C. **Escrowed Amount**

Pursuant to the Purchase Agreement, a portion of the Purchase Price was escrowed to pay any New Jersey State transfer taxes arising as a result of the Sale Transaction. After payment of transfer taxes to the State of New Jersey, the trust account value totals $179,809.76. Id. at ¶ 18. Defendants argue that summary judgment is appropriate because the Escrow Payment is part of the purchase price from JPC to Paper Plus. As such, Defendants aver that the Escrow Payment is subject to Steven's right to set off, and therefore cannot be considered an obligation of JPC's. (Def.'s Reply 15.) Similar to the disposition of the Excess Amount, the disposition of the Escrowed Account is integrally related to the issue of Steven's right to set off. As previously stated, genuine issues of material fact presently preclude this Court from granting summary judgment on related issues.

D. **Priority of Indebtedness to Wells Fargo**

The parties dispute whether the Consent Letter reserved priority of the Indebtedness over only the assets of Clark National and not the assets of Paper Plus. As is common with breach of contract matters, and as alluded to in Section A, the parties dispute their contractual intent at the time of formation of the agreements. Defendants argue that priority of the Indebtedness subordinates only to assets of Clark National. (Def.'s Mot. Summ. J. 7.) Plaintiff suggests the actual intent was to have Paper Plus, rather than, as stated, Clark National indemnify. (Pl.'s Rep. Mot. Summ. J. 12-6.) Plaintiff argues that this error in the contract should be reformed to reflect such intent. Id. It is clear that the parties dispute material facts regarding the contract as Plaintiff disputes the validity upon which Defendants rely. These material facts are pertinent to the issue of subordination. Summary judgment on this genuine issue is not appropriate.

**IV.     CONCLUSION**

Based on the foregoing, and for the reasons stated herein, Defendants' motion for summary judgment is **denied**; and Plaintiff's motion for summary judgment as to Count III is also **denied**. An Order stating this Court's disposition follows this Opinion.

                                       S/ Dennis M. Cavanaugh
                                       Dennis M. Cavanaugh, U.S.D.J.

Dated:       March  28th , 2011
Original:    Clerk
cc:          All Counsel of Record
             Hon. Mark Falk, U.S.M.J.
             File